758 F.2d 653
 Unpublished Disposition
NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
ZELLA RUSSEL, ADMINISTRATRIX OF THE ESTATE OF HOMER RUSSELL,
DECEASED, PLAINTIFF-APPELLANT,
v.
DALE W. BENNETT, M.D., DEFENDANT,
ELIZABETH GAMBLE DEACONESS HOME ASSOCIATION, D/B/A THE
CHRIST HOSPITAL, DEFENDANT-APPELLEE.
 NO. 84-3017
 United States Court of Appeals, Sixth Circuit.
 2/27/85
 
 ON APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE SOUTHERN DISTRICT OF OHIO
 BEFORE: CONTIE, KRUPANSKY and MILBURN, Circuit Judges.
 PER CURIAM.
 
 
 1
 Plaintiff-appellant, Zella Russell, Administratrix of the Estate of Homer Russell, deceased, appeals from the order of the district court granting the summary judgment motion of the defendant, Christ Hospital. For the reasons stated herein, we reverse.
 
 I.
 
 2
 The decedent, Homer Russell, was admitted to the Christ Hospital on April 8, 1980, by Dale W. Bennett, M.D., to ascertain the cause of decedent's complaint of blood in his urine. The decedent was diagnosed as suffering from cancer of the bladder, and on April 15, 1980, surgery was performed by Dr. Bennett at Christ Hospital to remove the malignancy. After the surgery, the decedent spent five (5) hours in a recovery room and was then moved to his room on the floor at approximately 7:30 p.m., pursuant to the order of Dr. Bennett.
 
 
 3
 At that point, according to the plaintiff's affidavit, she repeatedly asked the nurse attending her husband whether she could spend the night in his room to watch over him. Each request was denied, and the nurse assured her that her husband would be monitored approximately every fifteen (15) minutes. Plaintiff swears that she was repeatedly reassured by the nursing staff that there was no need for her to stay with her husband, that there was no need for a private nurse, and that the hospital staff would be monitoring her husband approximately every fifteen (15) minutes. Plaintiff swears that she left the hospital at approximately 8:15 p.m., only because of the repeated assurances by the nursing staff that her husband would be monitored frequently. Shortly after midnight the decedent was discovered without pulse and was pronounced dead. The cause of death has never been ascertained because the plaintiff refused to allow a postmortem examination.
 
 
 4
 By affidavit, the plaintiff swore that both the nurse in charge and Dr. Bennett told her that there had been a shift change at 11:00 p.m. and that her husband had not been checked until 12:15 a.m. the next day, which was when he was found dead. The plaintiff stated that she was told that the nurse did not check her husband until 12:15 a.m. because she had been busy checking her charts before beginning her rounds. The plaintiff further swore that the statements made to her by the nurse and Dr. Bennett made it clear that the hospital had not provided the monitoring reasonably necessary to a patient in her husband's condition, nor had the hospital cared for or monitored her husband in the manner and at the intervals which she had been promised only a few hours before his death.
 
 
 5
 The defendant, Christ Hospital, initially filed its motion for summary judgment on July 13, 1982, which respect to its own direct liability as a result of the conduct or acts of omission by its staff employees and with respect to its vicarious liability for the alleged acts and/or omissions of Dr. Bennett. The motion for summary judgment was supported by affidavits from two nurses and Dr. Bennett. Both nurses swore that the nursing care rendered to decedent was in full compliance with recognized standards in the community and was in full compliance with the established standards of the Christ Hospital. Dr. Bennett swore that at no time relevant to this litigation was he ever an authorized agent of the Christ Hospital in fact, nor did he ever hold himself out to be an agent of the Christ Hospital. In opposition, plaintiff filed an affidavit detailing her personal experience and the express representations and warranties made by employees of Christ Hospital. Thereafter, on December 28, 1982, the district court entered its first order concerning the motion for summary judgment finding that no issues of fact existed with regard to the vicarious liability of Christ Hospital for the acts of Dr. Bennett. In all other respects, the motion for summary judgment was denied.
 
 
 6
 Thereafter, Christ Hospital renewed its request for a complete summary judgment in its favor through a further motion filed on September 30, 1983. The hospital filed a memorandum which referred to the discovery deposition of Dr. James E. Lingeman, plaintiff's expert witness. The deposition of Dr. Lingeman, which had been taken on behalf of the hospital and which was based only upon the doctor's expertise and his review of the records of the deceased from Christ Hospital, revealed 'no criticism of the hospital.'
 
 
 7
 Subsequent to the filing of the second motion, the plaintiff filed an amended complaint which alleged breach of warranty and which included allegations of express representations by the hospital staff that the deceased would be monitored every fifteen (15) minutes.
 
 
 8
 On November 23, 1983, the district court entered a memorandum order by which it granted the summary judgment sought by Christ Hospital in its entirety. The district court noted that it had previously ruled that this was a 'medical claim' in the context of relevant Ohio law. The court stated that, as such, the plaintiff's proof must include expert evidence, not only of negligence, but also that defendant's negligence proximately caused the death. The court stated that the warranty allegations did not remove the case from the arena of medical malpractice and that those allegations did not lessen plaintiff's burd n of demonstrating the elements of a malpractice case. Because plaintiff's own expert witness had opined that 'the Christ Hospital nursing staff met its duty to Mr. Russell,' the district court held that summary judgment was, therefore, appropriate. This appeal followed.
 
 II.
 
 9
 Ohio law provides that in order to establish a prima facie case of malpractice, the plaintiff must present expert testimony to establish (1) the applicable standard of professional care, (2) that the defendant's acts failed to meet that standard, and (3) that the defendant's negligence, in probability, caused the injuries. Bruni v. Tatsumi, 46 Ohio St. 2d 127, 346 N.E.2d 673 (1976); Cooper v. Sisters of Charity of Cincinnati, 27 Ohio St. 2d 242, 272 N.E.2d 97 (1971). The district court granted the motion for summary judgment because the plaintiff failed to produce the required expert testimony.
 
 
 10
 The plaintiff agrees with this statement of the law, but argues that her claim is not one for medical malpractice. We agree. In Lombard v. Good Samaritan Medical Center, 69 Ohio St. 2d 471, 433 N.E.2d 162, cert. denied, 459 U.S. 857 (1982), the Ohio Supreme Court held that the term 'malpractice' does not apply to the acts of nurses and laboratory technicians:
 
 
 11
 Likewise, the term 'malpractice' has a limited definition. 'Today, the term, malpractice, is sometimes used loosely to refer to the negligence of a member of any professional group. However, legally and technically, it is still subject to the limited common-law definition. . . .
 
 
 12
 * * *
 
 
 13
 * * *
 
 
 14
 '. . . A nurse, although obviously skilled and well trained, is not in the same category as a physician who is required to exercise his independent judgment on matters which may mean the difference between life and death . . ..' Richardson v. Doe (1964), 176 Ohio St. 370, 372-373, 199 N.E.2d 878. Nor does the definition of malpractice encompass the conduct of laboratory technicians. . . .
 
 
 15
 Accordingly, neither of these cases presents an action in malpractice. . . .
 
 
 16
 433 N.E.2d at 163.
 
 
 17
 The defendant responds by arguing that the substance of the complaint controls the form, Hibbett v. City of Cincinnati, 4 Ohio App. 3d 128, 446 N.E.2d 832 (1982) and that plaintiff's claim is, in substance, one for malpractice. We disagree. If the plaintiff and the defendant agreed to a higher standard of care than that which the community requires, the defendant's conduct obviously cannot be measured by the standards and requirements of malpractice claims.
 
 
 18
 Because plaintiff's claim is not one for malpractice, the grant of summary judgment was error. Plaintiff has presented evidence of express warranties by the defendant hospital's nurses, evidence that those warranties were breached and evidence that the breach caused the decedent's death. Therefore, it cannot be said that defendant 'is entitled to a judgment as a matter of law.' Fed. R. Civ. P. 56(c).
 
 
 19
 REVERSED.